UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

CHRISTOPHER STOCKTON AND TRACY TAYLOR on behalf of themselves and others similarly situated,

Plaintiff,

v.

VANDERBILT MORTGAGE AND FINANCE, INC.,

Defendant.

Case No. _____

**JURY TRIAL DEMANDED**

# COMPLAINT

Christopher Stockton and Tracy Taylor ("Plaintiffs"), on behalf of themselves and others similarly situated (the "Class Members"), brings this action against Defendant Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") for originating manufactured-home-purchase loans without making a reasonable, good-faith determination that their borrowers would have a reasonable ability to repay those loans.

## INTRODUCTION

1. Manufactured homes, commonly known as mobile homes, are a vital source of affordable housing for millions of financially vulnerable, low-income Americans.

2. Many of these vulnerable Americans are located in rural areas and lack access to affordable site-built homes for themselves and their families.

3. Vanderbilt is a manufactured-home financing company that purports to provide access to affordable housing for this financially vulnerable population.

4. In reality, Vanderbilt saddles borrowers with mortgages they cannot reasonably afford to pay.

5. Since 2014, Vanderbilt's underwriting process has ignored clear and obvious red flags that certain consumers would not be able to repay their loans according to their terms.

6. Vanderbilt used implausible estimates of monthly expenses that meaningfully underestimated what consumers would need in order to keep food on the table and meet other living expenses after paying their monthly mortgage payments and debt obligations.

7. Additionally, Vanderbilt ignored clear indicators that its target consumers were already struggling to satisfy their existing debt obligations and lacked assets to repay these debts. These indicators included consumer credit reports that showed one or more debts that had already been sent to collection.

8. As a result, Vanderbilt originated loans without making a reasonable and good-faith determination of the consumer's ability to repay the loan.

9. Predictably, many of these consumers experienced late fees and penalties when their loans became delinquent. When those delinquent loans went into default, the affected consumers lost their homes through repossession or foreclosure.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction because this action presents a federal question pursuant to 28 U.S.C. § 1331.

11. This Court also has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class Members.

12. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

13. Tracy Taylor is a citizen of Tennessee.

14. Christopher Stockton is a citizen of Alabama.

15. Defendant Vanderbilt Mortgage and Finance, Inc. is a Tennessee corporation with its principal place of business at 500 Alcoa Trail, Maryville, TN 37804.

16. Defendant is a subsidiary of Clayton Homes, Inc.

17. Clayton Homes, Inc. is a subsidiary of Berkshire Hathaway, Inc.

## FACTS

18. Vanderbilt originates mortgage loans to consumers to finance the purchase of manufactured homes.

19. Most loans originated by Vanderbilt are for manufactured homes sold and manufactured by affiliated companies that are owned by Vanderbilt's parent, Clayton Homes, Inc.

20. Before originating a loan, Vanderbilt purports to make a reasonable and good-faith determination at or before consummation that the consumer has the ability to repay the loan according to its terms.

21. In 2014, Vanderbilt developed a residual income model as part of its internal underwriting process.

22. The residual income model subtracts the following costs from the applicant's monthly income:

    a. Food, healthcare, gasoline, and utility expenses;

    b. Monthly recurring debt obligations; and

    c. The projected mortgage payment.

23. Any positive amount left over after this calculation is considered the applicant's net residual income.

24. Vanderbilt evaluates net residual income along with the applicant's assets, debts, and credit profile to determine the consumer's ability to repay the loan.

25. The living expenses Vanderbilt uses in its residual income model are based on either the borrower's self-reported numbers or Vanderbilt's proprietary living-expense estimate (Vanderbilt's "Living Expense Estimate").

26. Vanderbilt uses its proprietary Living Expense Estimate when the borrower self-reports $0 in living expenses or other nominal amounts.

27. Vanderbilt's Living Expense Estimate assumes living expense figures based on family size that are unreasonable for a single borrower and increasingly unreasonable as a borrower's family size grows.

28. When estimating an applicant's living expenses, Vanderbilt's Living Expense Estimate does not consider other borrower characteristics or geographical variations in living expenses.

29. For example, Vanderbilt's Living Expense Estimate projects that a single parent with four dependents would incur monthly living expenses well below a reasonable estimate for a single parent's costs to clothe, feed, transport, and care for themselves and four children every month no matter where they live in the United States.

30. Vanderbilt's Living Expense Estimate is about half the average self-reported living expenses of Vanderbilt's own similarly situated loan applicants.

31. Vanderbilt's loan-underwriting policy permitted the company to rely on its implausible Living Expense Estimates to approve loans to borrowers who did not have enough income to cover their families' likely living expenses after paying their significant debt obligations each month.

32. In addition to relying on unrealistic Living Expense Estimates for many of its borrowers, Vanderbilt ignored the fact that many of these same borrowers had factors that indicated they lacked an ability to repay their loans.

33. Vanderbilt originated loans even where borrowers lacked assets (other than the value of the property securing the loan) that could be relied upon for repayment, given their lack of sufficient residual income.

34. Vanderbilt also disregarded evidence that borrowers had multiple debts in collection.

35. In some cases, Vanderbilt violated its own loan underwriting policy and made loans to borrowers who had negative net residual income under Vanderbilt's own implausible Living Expense Estimates.

36. For these reasons, borrowers were put into loans where Vanderbilt failed to make a reasonable, good faith assessment at or before the time the loan was made that they could reasonably repay those loans according to their terms.

37. Vanderbilt could not reasonably conclude that a consumer has a reasonable ability to repay their loan according to its terms where the borrower's income and assets (other than the value of the property securing the loan) would be insufficient to make their mortgage payment, other recurring debt obligations, and necessary living expenses.

38. Because of this, many of Vanderbilt's borrowers became delinquent on their loans within a few years of consummation and incurred late fees and penalties.

39. Many other borrowers filed for bankruptcy or eventually defaulted on their loans and lost their homes.

40. Plaintiffs did not become aware of Vanderbilt's internal loan-underwriting policies and practices until after the Consumer Finance Protection Bureau initiated litigation against Vanderbilt on January 6, 2025.

41. Tracy Taylor applied for a loan from Vanderbilt in 2013.

42. At the time she applied for the loan, Ms. Taylor was facing a debt collection action.

43. Vanderbilt approved Ms. Taylor for a loan.

44. Ms. Taylor has struggled to make payments on her loan.

45. Ms. Taylor has missed a payment on her loan.

46. Mr. Taylor's current loan burden does not leave her with sufficient residual income for living and daily expenses.

47. Christopher Stockton applied for a loan from Vanderbilt in 2023.

48. At the time he applied for the loan, Mr. Stockton was facing debt collection actions.

49. Vanderbilt approved Mr. Stockton for a loan.

50. Mr. Stockton has struggled to make payments on his loan.

51. Mr. Stockton has missed a payment on his loan.

52. Mr. Stockton's current loan burden does not leave him with sufficient residual income for living and daily expenses.

### COUNT I: VIOLATION OF TILA AND REGULATION Z's MINIMUM UNDERWRITING STANDARDS, 15 U.S.C. § 1601 et seq.

53. Plaintiffs re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

54. Defendant is subject to the Truth in Lending act, 15 U.S.C. § 1601 *et seq.* (TILA), and TILA's implementing Regulation Z, 12 C.F.R. part 1026.

55. Defendant is a "creditor" within the meaning of TILA and Regulation Z because Defendant regularly extends credit in the form of mortgage loans to consumers for personal, family, or household purposes. The credit is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment) and the obligation is initially payable to Defendant. *See* 12 C.F.R. § 1026.2(12), (17), implementing 15 U.S.C. § 1602(g), (i).

56. Plaintiffs are consumers within the meaning of TILA and Regulation Z because they obtained loans as a consumer credit transaction from Vanderbilt which was secured by their principal dwelling. 15 U.S.C. § 1602 *et seq.*, 12 C.F.R. § 226.2(a)(11)

57. TILA and its implementing regulation, Regulation Z, set forth minimum underwriting standards for consumer-credit transactions secured by a dwelling. 15 U.S.C. § 1639c, 12 C.F.R. § 1026.43. Vanderbilt's dwelling-secured mortgage loans must meet Regulation Z's minimum underwriting standards.

58. TILA provides that "[i]n accordance with regulations prescribed by the Bureau, no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms, and all applicable taxes, insurance (including mortgage guarantee insurance), and assessments." 15 U.S.C. § 1639c(a)(1).

59. In turn, Regulation Z provides that a creditor such as Vanderbilt "shall not make a loan that is a covered transaction unless the creditor makes a reasonable and good faith determination at or before consummation that the consumer will have a reasonable ability to repay the loan according to its terms." 12 C.F.R. § 1026.43(c)(1).

60. The commentary to Regulation Z also explains that "whether a particular ability-to-repay determination is reasonable and in good faith will depend not only on the underwriting standards adopted the creditor, but on the facts and circumstances of an individual extension of credit and how a creditor's underwriting standards were applied to those facts and circumstances." 12 C.F.R. pt. 1026 supp. I, cmt. 43(c)(1)-1.i.

61. Additionally, the fact that the "creditor disregarded evidence that the consumer may have insufficient residual income to cover other recurring obligations and expenses, taking into account the consumer's assets other than the property securing the loan, after paying his or her monthly payments for the covered transaction, any simultaneous loans, mortgage-related obligations, and any current debt obligations" is "evidence that a creditor's ability-to-repay determination was not reasonable or in good faith." 12 C.F.R. pt. 1026 supp. I, cmt. 43(c)(1)-1.ii.B.5.

62. As discussed in paragraphs 18 to 52 above, Vanderbilt made mortgage loans to borrowers without making a reasonable and good-faith determination that the borrowers could repay them according to their terms, in violation of TILA, 15 U.S.C. § 1639c(a)(1), and Regulation Z, 12 C.F.R. § 1026.43(c).

63. TILA establishes a private right of action on behalf of an individual or a class for violation of these minimum underwriting standards. *See* 15 U.S.C. § 1640.

## DEMAND FOR RELIEF

Plaintiffs, on behalf of themselves and all others situated, request that this Court:

1. Empanel a jury of six (6) to try this matter;
2. Award compensatory and punitive damages and other monetary relief against the Defendant;

3. Enjoin Defendant from underwriting and financing loans under its unlawful Living Expense Estimate;

4. Award costs against Defendant; and

5. Award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

                                                */s/J. Gerard Stranch, IV*
                                                J. Gerard Stranch, IV (TN 23045)
                                                **STRANCH, JENNINGS & GARVEY, PLLC**
                                                223 Rosa L. Parks Avenue, Suite 200
                                                Nashville, Tennessee 37203
                                                Telephone: (615) 254-8801
                                                gstranch@stranchlaw.com

                                                Samuel J. Strauss*
                                                **STRAUSS BORELLI, PLLC**
                                                One Magnificent Mile
                                                980 N Michigan Avenue, Suite 1610
                                                Chicago, Illinois 60611
                                                T: (972) 263-1100
                                                F: (872) 263-1109
                                                sam@straussborellli.com

                                                * *Pro Hac Vice* applications to be submitted

                                                *Counsel for Plaintiff and the Proposed Class*